**RAILROAD CONCRETE CROSSTIE CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 220–81T.

United States Claims Court.

July 17, 1984.

John J. Mullenholz, Washington, D.C., for plaintiff.

George L. Squires, Washington, D.C., with whom were Asst. Atty. Gen. Glenn L. Archer, Jr., and Theodore D. Peyser, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment. Plaintiff Railroad Concrete Crosstie Corporation ("plaintiff") sues for refund of $340,446.50, plus interest, for taxes imposed pursuant to the Railroad Retirement Tax Act, 26 U.S.C. §§ 3201–3233 (1976) (the "RRTA"), which plaintiff paid pursuant to two Inter-

nal Revenue Service (the "IRS") assessments covering the periods 1973–75 and 1976–79. Plaintiff seeks relief under section 530 of the Revenue Act of 1978, Pub.L. 95–600, § 530, 92 Stat. 2763, 2885 (codified at 26 U.S.C. § 3401 note, 26 U.S.C. § 3101 (1982)) ("section 530"). The sole issue is whether section 530, which for a period of time immunizes an employer from employment tax liability for individuals not treated as employees, precludes the IRS from assessing plaintiff for RRTA taxes for the years in question.

## FACTS

The parties have stipulated to facts they deem material. From the time of its inception in 1971 as a wholly-owned subsidiary of the Florida East Coast Railway Co. ("FECR"), plaintiff paid and collected taxes on its employees pursuant to the Federal Insurance Contribution Act, 26 U.S.C. § 3121(d) (1976) ("FICA"), and the Federal Unemployment Tax Act, 26 U.S.C. § 3306(i) (1976) ("FUTA"). On September 6, 1977, the IRS determined, as a result of an audit on plaintiff's employment tax returns, that plaintiff was an "employer" for purposes of the RRTA for taxable periods from 1973–75. After plaintiff was officially assessed on April 20, 1979, for all monies owed pursuant to the RRTA, plaintiff paid the assessment, made a timely claim for a refund, and filed this lawsuit. Thereafter, the IRS assessed plaintiff for deficiencies of RRTA taxes for all taxable periods between 1976–79.

Two months prior to the IRS's final assessment against plaintiff, the General Counsel for the United States Railroad Retirement Board determined in an unrelated examination of plaintiff that plaintiff had been an "employer" for purposes of the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231(a)(1)–231t (1976), and the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351–367 (1976), since plaintiff's inception. Subsequently, the General Counsel reaffirmed and further explained this determination, whereupon plaintiff appealed the General Counsel's decision to the Rail-

road Retirement Board (the "Board"). By a vote of two to one, the Board summarily affirmed the decision of the General Counsel. Plaintiff then appealed the Board's decision to the United States Court of Appeals for the Eleventh Circuit, at which time the instant action was suspended pending the outcome of that appeal. The Eleventh Circuit affirmed the Board's decision, *Railroad Concrete Crosstie Corp. v. RRB*, 709 F.2d 1404 (11th Cir.1983), and that decision became final when plaintiff did not petition the United States Supreme Court for a writ of certiorari.

This court thereafter ordered plaintiff to show cause as to why the disposition of its case should not be governed by the decision of the Eleventh Circuit. Plaintiff identified three separate issues ripe for adjudication which had not been decided. However, the parties jointly agreed to litigate only the section 530 issue.

In addition to the stipulation entered for purposes of the present lawsuit, the parties agreed to be bound by their stipulation before the Eleventh Circuit. The opinion of that court accurately restates the earlier stipulation, *Railroad Concrete Crosstie Corp. v. RRB*, 709 F.2d at 1406–07, and only those facts material to the present dispute are summarized.

Plaintiff was formed by FECR from a business that previously supplied railroad ties to FECR and is principally engaged in the manufacture of concrete railroad ties. Plaintiff leases from FECR the property on which its manufacturing plant is located. Only one employee of plaintiff has been paid by FECR. Most (according to the Eleventh Circuit, 90 per cent) of the ties manufactured by plaintiff are purchased by FECR, with profits realized by plaintiff.

Accounting services are performed for plaintiff by the FECR accounting department. Personnel records are maintained by FECR for plaintiff's employees. Plaintiff is billed by FECR and pays for the performance of these accounting and recordkeeping services.

With two exceptions, plaintiff's employees perform no activities for FECR. First,

on approximately 12 occasions since plaintiff was incorporated and on an emergency basis, an employee of plaintiff has operated a piece of plaintiff's equipment to alleviate a problem faced by FECR. One such case involved a shifted load in an FECR car where plaintiff's loader was used to move the load. In almost all of these emergency situations, a supervisory employee of plaintiff has performed the task. Secondly, the bulkheads which hold the concrete ties in place on the flat cars of FECR occasionally require welding. If the bulkheads are not welded when the cars arrive on the property leased by plaintiff, a welder employed by plaintiff sometimes makes the necessary welding repairs.

As stated above, since 1971 plaintiff has paid FICA and FUTA payments for its workers and has collected and turned over to the IRS the employee portion of the FICA and FUTA payments.

## DISCUSSION

### 1. *The Plain Meaning of the Statute*

Before interpreting the statute it considered, the Eleventh Circuit pointed out that a court must first consult the statutory language. *Railroad Concrete Crosstie Corp. v. RRB*, 709 F.2d at 1407 (citing cases). In this case, as defendant ventures, the statute appears uncharacteristically straightforward.

Section 530 provides in part:

CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.

(a) TERMINATION OF CERTAIN EMPLOYMENT TAX LIABILITY FOR PERIODS BEFORE 1980.—

(1) IN GENERAL. If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) STATUTORY STANDARDS PROVIDING ONE METHOD OF SATISFYING THE REQUIREMENTS OF PARAGRAPH (1).—For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

\*　　\*　　\*　　\*　　\*　　\*

(b) PROHIBITION AGAINST REGULATIONS AND RULINGS ON EMPLOYMENT STATUS.—No regulation or Revenue Ruling shall be published on or after the date of the enactment of this Act and before January 1, 1980 (or, if earlier, the effective date of any law hereafter enacted clarifying the employment status of individuals for purposes of the employment taxes) by the Department of the Treasury (including the Internal Revenue Service) with respect to

the employment status of any individual for purposes of the employment taxes.

(c) DEFINITIONS.—For purposes of this section—

(1) EMPLOYMENT TAX.—The term "employment tax" means any tax imposed by subtitle C of the Internal Revenue Code of 1954.

(2) EMPLOYMENT STATUS.—The term "employment status" means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor (or other individual who is not an employee).

Section 530(a) states that workers who were not treated as employees by an employer will not be considered employees for purposes of employment taxes. Section 530(b) prohibits the IRS from promulgating new regulations or revenue rulings on the subject of common law employment status. Definitions of employment tax and employment status are found in section 530(c). The temporary provisions of section 530 have been extended.

Section 530(a)(1)(A) equates payment of employment taxes with treatment of workers as employees. The term "employment tax" is defined in section 530(c)(1) as any tax imposed by subtitle C of the 1954 tax code. Subtitle C, in turn, refers to FICA, FUTA, and RRTA taxes. Thus, based on payment of FICA and FUTA taxes, plaintiff has treated its workers as employees under section 530(a).

Plaintiff argues that defendant looks erroneously to section 530(b), which prohibits the IRS from issuing regulations that affect workers' "employment status." Assuming that defendant's argument fairly can be so construed, it is true that section 530(a) does not use the term "employment status." However, section 530(b) complements section 530(a). By its terms section 530(b) only applies to controversies in which a taxpayer's workers have not been treated as employees "under the usual common law rules applicable in determining the employer-employee relationship."

In applying section 530(c)(2), defining "employment status," the IRS has defined common law employees as those workers who perform services that are subject to the will and control of their employer as to what must be done and how it must be done. *Employer—Employee Relationship: Common Law Employees*, [1984] 8 Stand.Fed.Tax Ref. (CCH) ¶ 4939.191. Plaintiff's relationship with its workers gives every indication that those workers can be considered "employees" within the common law rules for purposes of section 530(b).

2. *Legislative History*

In order to avoid the result commanded by the unambiguous language of the statute, plaintiff argues that the legislative history of section 530 should not render plaintiff's payment of FICA and FUTA taxes decisive. *But see Deluxe Check Printers, Inc. v. United States*, 5 Cl.Ct. 498, 501–02 & n. 3 (1984) (order denying motion to compel discovery) (citing cases).

Section 530 was a relatively minor and late addition in the legislative process preceding passage of the massive Revenue Act of 1978. As a result, the legislative history of this provision is somewhat meager in comparision with other sections of Pub.L. 95–600. Section 530 was intended to alleviate temporarily a long-running controversy between taxpayers and the IRS as to whether workers treated as independent contractors should be reclassified as employees for employment tax purposes. The consequences of such a reclassification were quite severe because taxpayers were made retroactively liable for all back employment taxes owed as a result of the change in status of their workers from non-employees to common law employees. Section 530 provided interim relief to taxpayers involved in such employment tax status controversies by allowing taxpaying entities which had not treated their workers as employees and which had a reasonable basis for treating a worker as other than an employee in the past to continue such treatment through 1979 without interference (in the form of a reclassification

ruling) by the IRS. Specifically, section 530(a)(2) contains alternative "safe haven" provisions which, if met, constitute a reasonable basis for treating a worker as other than an employee and thereby provide a protective shield for the taxpayer against IRS reclassification.

Three separate reports on the provision which ultimately became section 530 (the conference report, H.Conf.Rep. No. 1800, 95th Cong., 2d Sess. 271 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, 7266, 521–627 [hereinafter cited as "Conf. Rep."]; the Senate Finance Committee report, S.Rep. No. 1263 on H.R. 13511, 95th Cong., 2d Sess. 209–11 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6972–74; and the House Committee on Ways and Means report (on a separate tax bill H.R. 14159), H.R.Rep. No. 1748, 95th Cong., 2d Sess. (1978)), point out the specific problem which Congress was attempting to correct. For example, the Conference Report states, "The Amendment (530) prohibits IRS reclassifications of individuals whom taxpayers in good faith treated as *independent contractors* provided taxpayers fulfilled tax filing requirements." Conf.Rep. at 271 (emphasis added). The report reiterates that "[the Agreement] terminates per 1979 employment tax liabilities of taxpayers who had a reasonable basis for treating workers *other than as employees....*" *Id.* (emphasis added). Although, as plaintiff contends, the sweep of section 530(a) included individuals other than independent contractors, these workers must not have been treated as employees. Plaintiff did treat its workers as employees for purposes of employment taxes, so that this argument is of no avail.

In enacting section 530, Congress intended to protect taxpayers whose workers were being reclassified from non-employee to employee status and not "to excuse tax liability where the employer classified its workers as employees but merely paid the wrong employee tax." *Standard Building Corp. v. United States*, No. 81 C 6158, slip op. at 2 (N.D.Ill. Sept. 15, 1983). Although plaintiff rejects *Standard Building* as "an erroneous analysis of the law and its legis-

lative history," this court concludes, upon independent analysis, that the decision is well-reasoned and correct. Even if one assumes, *arguendo*, that the court in *Standard Building* mistakenly gleaned from the legislative history a statutory purpose to prevent taxing workers previously treated only as independent contractors, the language of the statute puts plaintiff beyond the reach of the prohibition against assessing the tax: Section 530(a)(1) specifically requires that an employer must not have treated its workers as employees in order to be excused from liability. Here, as in *Standard Building*, section 530 does not apply because plaintiff did treat its workers as employees by paying FICA and FUTA taxes.

### CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted. The Clerk of the Court will dismiss the complaint.

IT IS SO ORDERED.

Costs to the prevailing party. 28 U.S.C. § 2412(a) (1982); RUSCC 54(d).