**DELUXE CHECK PRINTERS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 316–83T.**

United States Claims Court.

July 13, 1984.

Phillip H. Martin, Minneapolis, Minn., attorney of record for plaintiff. Thomas A. Vander Molen, Minneapolis, Minn., of counsel.

W.C. Rapp, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

This matter comes before the court on plaintiff's Motion for Order Compelling Discovery, filed pursuant to RUSCC 37(a), and defendant's opposition thereto. In this action, plaintiff seeks a refund of federal excise taxes for "self-dealing," assessed for the taxable years 1976–78 pursuant to Section 4941 of the Internal Revenue Code of 1954 (I.R.C.). Prior to the filing of plaintiff's motion to compel discovery, defendant previously filed a motion for summary judgment on December 14, 1983, alleging that as a matter of law, the actions of plaintiff rendered it liable for "self-dealing" excise taxes under I.R.C. § 4941(d)(2)(F) and Treas.Reg. § 53.-4941(d)–3(d), adopted thereunder. For the purpose of responding to defendant's motion for summary judgment, plaintiff seeks discovery of all memoranda, private letter rulings, and other documents prepared by the Treasury Department or the Internal Revenue Service (I.R.S.) which explain the

---

meaning and purpose of said statute and regulation. For the reasons delineated hereinafter, this court is of the opinion that said motion should be denied.

## FACTS

Plaintiff is a corporation, with its principal place of business in St. Paul, Minnesota. Beginning in 1966, plaintiff instituted a Treasury Share Acquisition Program, for the purpose of providing treasury shares for reissuance to meet its obligations in connection with its stock bonus and employee stock purchase plans. Subject litigation stems from six separate transactions taking place in tax years 1976–77 pursuant to said Program, in which plaintiff purchased (*i.e.,* redeemed) a total of 75,000 shares of its own capital stock from Deluxe Check Printers Foundation (the Foundation), for an aggregate price of $1,754,375. The Foundation is a "private foundation" for the purposes of I.R.C. § 4941, to which plaintiff is admittedly a substantial contributor.

Plaintiff, as a "disqualified person," initially paid "self-dealing" taxes with respect to the foregoing redemption in May and July of 1978, pursuant to I.R.C. § 4941. At other times in 1978, plaintiff paid the Foundation a total of $437,279, which amount allegedly constituted "correction" of the "self-dealing" aspects of the foregoing redemption of 1976. Plaintiff then filed claims for refund of "self-dealing" excise taxes beginning in August 1978, of which $77,986.32 was denied by the I.R.S. in July 1982.

On September 23, 1983, subsequent to the filing of the petition in this court, plaintiff served a request for identification and production of certain documents on defendant. Specifically, plaintiff requested that defendant identify and supply all documents prepared by the Treasury Department or I.R.S. which discuss the history, development, or meaning of I.R.C. § 4941(d)(2)(F) and Treas.Reg. § 53.-4941(d)–3(d). Thereafter, on October 24, 1983, defendant served its objections to said request, premised on the grounds that

the documents sought were irrelevant and privileged. Defendant subsequently submitted a letter to plaintiff on April 13, 1984, in which it advised that no evidence was found indicating that a legislative file had been established with respect to the adoption or amendment of Section 4941(d)(2)(F). To said letter there was also attached a list of Treasury documents identified as relating to plaintiff's request, but with respect to which it continued to object to said request as irrelevant.

The parties agree that plaintiff would be liable for "self-dealing" excise taxes under § 4941 if the transactions at issue do *not* qualify under the exception delineated in subsection 4941(d)(2)(F), which states in pertinent part as follows:

> (F) any transaction between a private foundation and a corporation which is a disqualified person (as defined in section 4946(a)), pursuant to any ... *redemption,* ... shall *not* be an act of self-dealing *if all of the securities of the same class as that held by the foundation are subject to the same terms* and such terms provide for receipt by the foundation of no less than fair market value;
>
> ...

(Emphasis added.)

Defendant concedes that pursuant to this statutory exception, plaintiff's redemption ultimately resulted in the receipt by the Foundation of fair market value. Hence, the dispositive question under the statute on the summary judgment motion will be whether, in connection with plaintiff's redemptions in 1976–77, all of the securities in the same class as that held by the Foundation were *subject to the same terms* as those redeemed from the Foundation. The pertinent interpretive regulation that deals with this question is Treas.Reg. § 53.-4941(d)–3(d)(1), which provides, in pertinent part, as follows:

> ... For purposes of this paragraph, all of the securities are not "subject to the same terms" *unless,* pursuant to such transaction, *the corporation makes a bona fide offer on a uniform basis to*

*the foundation and every other person who holds such securities....*

(Emphasis added.)

Plaintiff contends that the I.R.S. and Treasury Department documents it seeks may shed light on the "proper focus" of the foregoing statute and regulation, which it believes to have been erroneously interpreted and applied by the I.R.S. In plaintiff's view, the purpose of said statute and regulation is simply to ensure that private foundations are treated *no less favorably* than other shareholders of a corporation respecting the same securities. Conversely, defendant takes the position that the documents plaintiff seeks are thoroughly irrelevant to the true issue(s) in this case, *infra,* and that such documents are covered by the attorney-client privilege.

## DISCUSSION

Inasmuch as plaintiff is entitled, under RUSCC 26(b)(1), to discover *all* material "relevant" to the subject matter at issue, the threshold question is whether the material plaintiff seeks is relevant to the issues raised in the instant case. By dissecting plaintiff's request into its component parts, a more enlightening resolution of this question can be obtained.

First, plaintiff seeks all Treasury Department and I.R.S. documents that explain the purpose of Congress in enacting I.R.C. § 4941(d)(2)(F). The court interprets said request, which was embellished at oral argument, to encompass only those documents in the possession of the Treasury Department which interpreted said statute *after* its passage.[1] Assuming that such documents exist, we view these documents as clearly irrelevant to the matters at issue here. This court cannot sustain plaintiff's

contention that internal administrative documents of an executive agency, purporting to explain the meaning or purpose of particular statutory language, have any definitive bearing on the purpose of *Congress* in promulgating such statutory language. Plaintiff refers this court to no authority supportive of this position. To the contrary, it strains credulity to contend that such postenactment documents could reasonably be considered to form any legitimate part of the legislative history to subject statutory provision which may be considered in determining whether the I.R.S. has properly applied the statute.

Secondly, plaintiff seeks all Treasury and I.R.S. documents that explain the purpose of the Treasury Department in promulgating Treas.Reg. § 53.4941(d)–3(d). In making this request, plaintiff avers that it is primarily interested in using the material it receives for the objective of clarifying the meaning of said regulation, which it contends to be ambiguous on its face, and which should properly be interpreted favorably to its position. Plaintiff has also reserved the right, however, to argue that the regulation is invalid, if said regulation is not interpreted in a manner compatible with its position.[2]

Such material sought by plaintiff appears, in essence, to be analogous to the "legislative history" of a congressional enactment and the agency's case law thereunder. Material of this type has been held discoverable or relevant in circumstances where a party wished to ventilate background material serving to clarify the scope of an *ambiguous* regulation. *Bank of America v. United States,* 78–2 U.S.T.C. ¶ 9493 (N.D.Cal.1978); *see also Jewett v. Commissioner,* 455 U.S. 305, 312–15 [102 S.Ct. 1082, 1087–1089, 71 L.Ed.2d 170]

---

1. This is true inasmuch as defendant's April 13, 1984 letter to plaintiff, *supra,* stated that it was aware of no legislative suggestions, draft bills, or other material which it forwarded to Congress in connection with the passage or amendment of the statute in question (*i.e., prior* to the passage of the statutory provision in issue). Plaintiff has nowhere challenged the veracity of this assertion of defendant.

2. The dichotomy suggested by plaintiff between his position in clarifying the meaning of the regulation (because it is ambiguous and does not reflect congressional intent) and asserting that the regulation as so structured is invalid, is a distinction without a meaningful difference. In substance, plaintiff portends that the regulations do not reflect congressional intent and are thus invalid.

(1982) (Treasury background memorandum cited as probative indicator of purpose of Treasury regulation where the "text was not entirely clear"); *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 261–62 [101 S.Ct. 2288, 2296–2297, 68 L.Ed.2d 814] (Private letter rulings probative of internally inconsistent Treasury Department interpretation of statute). On the other hand, in circumstances where a party sought to challenge the validity of a regulation that was clear on its face, similar material has been held to be irrelevant and therefore nondiscoverable. *Furman v. United States*, 83–2 U.S.T.C. ¶ 9739 (D.S.C.1983).

█ Although plaintiff seeks to bring the instant case under the ambit of the foregoing *Bank of America* decision, this court is of the view that the holding in *Furman, supra*, is persuasively apposite to the case at bar. As defendant notes, the fatal flaw in plaintiff's argument is that the regulation in question here is totally unambiguous with respect to the instant facts. In clear and unmistakable terms, the regulation provides that all of the securities of the same class as that held by the foundation are not "subject to the same terms" unless the corporation makes a *"bona fide offer ... to ... every person"* who holds such securities. Plaintiff concedes that it did not make such a bona fide offer to every person who owned the class of stock owned by the Foundation. Thus, it is clear that no ambiguity pertinent to the case at bar exists in the applicable regulation which the requested background material in the files of the I.R.S. might serve to clarify.

█ In the statutory context, it has long been settled that although a statute's legislative history is a useful tool for courts in the interpretation of vague and/or ambiguous statutory language, it is inappropriate to utilize legislative history for guidance when the language of a statute is clear. *Ex parte Collett*, 337 U.S. 55, 61 [69 S.Ct. 944, 947, 93 L.Ed. 1207] (1949); *United Mine Workers v. Federal Mine Safety and Health Review Commission*, 671 F.2d 615, 621 (D.C.Cir.1982). The reason for this general rule, as explained by our predecessor court, is that an uncorrected error or intentional statement without Congressional approval is considered much more likely to have been made in Congressional documents, often produced by staff officers without full Congressional oversight, than in the statute itself. *Hart v. United States*, 218 Ct.Cl. 212, 227–28, 585 F.2d 1025 (1978); *see also National Small Shipments Traffic Conference, Inc. v. CAB*, 618 F.2d 819, 828 (D.C.Cir.1980).[3]

*A fortiori*, there seems to be an even greater possibility of error and/or misstatements of an agency's position in background material prepared in connection with a regulation. This is particularly so because such documents may not have been created with the objective of guiding the public. Consequently, this court views the foregoing proscription against resorting to legislative history, in the absence of vagueness or ambiguities, as worthy of stronger emphasis in the context of the use, as contemplated by plaintiff, of the "legislative history" of an unambiguous regulation.

In view of the foregoing, plaintiff's perception of the true issue in this case is clearly misplaced. As was the case in *Furman, supra*, this case presents no issue of *why* the I.R.S. chose to promulgate the regulation in question. Rather, because the court considers the regulation to be facially unambiguous, we view the only

**3.** In certain "rare and exceptional circumstances," the courts have made an exception to the foregoing general rule. See *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 187 n. 33 [98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117] (1978). For example, if "the absurdity [of the statutory language, if followed, is] so gross as to shock the general moral or common sense," the courts have utilized the legislative history of a statute to override clear statutory language. *Crooks v. Harrelson*, 282 U.S. 55, 60 [51 S.Ct. 49, 50, 75 L.Ed. 156] (1930); *quoted in Hart*, 218 Ct.Cl. at 226 [585 F.2d 1025]. Assuming, *arguendo*, that a similar exception should exist with respect to interpretive regulations, this court believes that the operative language of subject regulation cannot conceivably produce a sufficiently absurd result to qualify under such an exception.

**502**

legally cognizable claim made by the plaintiff at this posture to be that said regulation is in disharmony with the intent of Congress.

Plaintiff is suggesting here that the "tail should wag the dog" by looking to the administrative "legislative history" and case law of interpretive regulations to determine its substantive rights. That is not the proper scheme for this court to pursue in passing on the dispositive issues here.[4] In *United States v. Wiltberger*, 5 Wheat. 75 [5 L.Ed. 37] (1820), Chief Justice Marshall stated that:

> ... the intention of the lawmaker must govern in the construction of ... statutes.... The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words, ... *in search of an intention* which the words themselves did not suggest. (Emphasis added.)

5 Wheat. at 95–96 [5 L.Ed. 37]; *quoted in Yates v. United States*, 354 U.S. 298, 305 [77 S.Ct. 1064, 1069, 1 L.Ed.2d 1356] (1957).

Consequently, this court must look to the language and legislative history (if appropriate) of the applicable *statute* in order to determine whether plaintiff's claim has merit and not to any administrative documents purporting to expound the meaning and purpose of the related regulations. Against the foregoing background, we view that which is contained in the administrative files of the Treasury Department and the I.R.S. relating to the meaning, purpose, and intent of the *regulation*, to be irrelevant to the purpose and intent of Congress in promulgating the statutory provision pertinent here.

**4.** With respect to the private letter rulings sought by plaintiff, the court also notes that inasmuch as plaintiff does not contend that it was treated inconsistently with other taxpayers in a private letter ruling issued to *it*, the rulings

CONCLUSION

Although case law teaches that the discovery provisions of Rule 26 should be liberally construed (*see Herbert v. Lando*, 441 U.S. 153, 177 [99 S.Ct. 1635, 1649, 60 L.Ed.2d 115] (1979)), this court is of the opinion, for the reasons discussed above, that all of the material sought by plaintiff is irrelevant to any matter at issue in the instant case, since it would contain no admissible evidence nor is it reasonably calculated to lead to admissible evidence. It is therefore unnecessary to reach the issue of attorney-client privilege raised by defendant. Accordingly, pursuant to RUSCC 26(b), plaintiff's RUSCC 37(a) motion to compel discovery is denied.

IT IS SO ORDERED.

issued to other taxpayers would have no probative value on plaintiff for their own sake. *See, e.g., Shakespeare Co. v. United States*, 182 Ct.Cl. 119, 128, 389 F.2d 772 (1968).