ARMCO, INC. FORMERLY ARMCO STEEL CORPORATION AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ARMCO, INC. AND SUBSIDIARIES, FORMERLY ARMCO STEEL CORPORATION AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 20037-85, 45229-85.    Filed October 28,1986.

*James P. Holden, Kenneth I. Jonson* and *Joseph P. Esposito*, for the petitioner.

*Joseph R. Goeke*, for the respondent.

OPINION

WILLIAMS, *Judge*: Petitioner seeks a ruling prior to trial on the admissibility of an affidavit of a former employee of the Department of Treasury and the Internal Revenue Service who assisted in drafting section 1.167(a)-11(d)(2), Income Tax Regs. The proper application of this section of the regulations, particularly example (2) of section 1.167(a)-11(d)(2)(vi), Income Tax Regs., is one of the issues that the Court must decide after trial. Respondent objects to the admission of the affidavit, and the parties have filed memoranda in support of their respective positions.

On January 5, 1983, petitioner obtained the affidavit of Karl Ruhe purporting to explain the intent of the drafters in choosing the language and examples of section 1.167(a)-11(d)(2), Income Tax Regs. Ruhe was Chief of the Engineering Appraisal Section, Office of Assistant Commissioner (Technical), Internal Revenue Service, from 1962 to 1972. From 1972 to 1980, he was Director of the Department of Industrial Economics, Department of Treasury. Ruhe also served as the principal technical adviser on depreciation, repair, and maintenance practices for the Internal Revenue Service. Ruhe was a member of a special task force of Internal Revenue Service and Treasury Department officials charged with formulating regulations interpreting section 167.[1] According to Ruhe and the affidavit of Ernest S. Christian, Esq., then a staff attorney with the Office of Tax Legislative Counsel and a member of the Task Force, Ruhe was principally responsible for originating the concept of the percentage repair allowance and for drafting the implementing regulations, including example (2) of section 1.167(a)-11(d)(2)(vi), Income Tax Regs. Section 1.167(a)-11(d)(2), Income Tax Regs., was adopted on June 22, 1971. See T.D. 7128, 1971-2 C.B. 132. Ruhe is now deceased.

Petitioner asks the Court to admit the affidavit in lieu of Ruhe's testimony to support its interpretation of regulations section 1.167(a)-11(d)(2). Respondent objects to the admission of the affidavit on grounds of both relevancy and hearsay. Petitioner contends that the affidavit of the person principally responsible for conceiving the repair allowance

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

and for drafting the regulation implementing the rule to be construed by the Court is manifestly relevant. Petitioner concedes that the affidavit is hearsay but contends that it falls within the "catch-all" exception to the hearsay rule, rule 804(b)(5), Federal Rules of Evidence.

Rule 401, Federal Rules of Evidence, applicable in this Court pursuant to Rule 143, Tax Court Rules of Practice and Procedure, and section 7453, defines relevant evidence as "evidence having any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.) The Ruhe affidavit addresses not the facts of this case but a legal issue in this case, specifically the proper interpretation of Example (2), section 1.167(a)-11(d)(2)(vi), Income Tax Regs. Because the affidavit does not tend to prove or disprove "the existence of any fact that is of consequence" to the disposition of this case, it is not relevant within the meaning of rule 401.

First, Ruhe was only one member of a special task force charged with drafting the regulation at issue. His role was to provide the necessary factual background on depreciation, repair and maintenance practices in various industries. Even though in conceiving the repair allowance rule and in drafting example (2) he participated in developing the Treasury's policy, his opinion on the intended meaning of the example would be only one among a number of opinions held by individuals responsible for the adoption of the regulation. Presumably, the then Chief Counsel, the then Commissioner, the then Assistant Secretary (Tax Policy) and others also have views on the proper meaning of the regulation.

Second, no one's personal views can be accepted as a pronouncement of the intended meaning of the regulation. Ruhe's affidavit is not an expression of institutional views but of his personal views. We do not doubt that Ruhe was principally responsible for developing the rules and worked closely with Christian in drafting the implementing language of the regulation. Nevertheless, Ruhe's statement of *his* intent is not necessarily congruent with *institutional* intent. His affidavit is not, as petitioner argues, analogous

to the memorandum from the Commissioner to the Secretary of Treasury discussed by the Supreme Court in *Jewett v. Commissioner*, 455 U.S. 305, 313-314 n. 15 (1982). Such a memorandum is a statement of the official views of the Internal Revenue Service in urging the adoption of the regulation by the Secretary. Such a memorandum is intended to state institutional views.

Third, even if Ruhe's affidavit could be shown to state fully, completely and accurately an institutional view of the intended meaning of the regulation, the statement was not contemporaneous with the promulgation of the regulation but was made 12 years later. Such a statement could, at best, have no more authority than a revenue ruling which states the institutional litigating position of the Internal Revenue Service. Cf. *Stubbs, Overbeck & Associates, Inc. v. United States*, 445 F.2d 1142, 1146-1147 (5th Cir. 1971); *Estate of Lang v. Commissioner*, 64 T.C. 404, 406-407 (1975), affd. 613 F.2d 770 (9th Cir. 1980). The proper interpretation of a regulation as a matter of law is a responsibility that ultimately rests with the courts. In exercising its judicial function, the court may be aided by the views of the drafters on the intended meaning of the language, but to be accorded any weight, those views cannot be post hoc, especially 12 years after publication. In contrast, the Commissioner's memorandum in *Jewett* was contemporaneous with the transmittal of the regulations to the Secretary.

Finally, Ruhe's affidavit was not prepared for guidance to the public in interpreting the regulation. See *Deluxe Check Printers, Inc. v. United States*, 5 Cl. Ct. 498 (1984). Documents prepared for public consumption, such as a preamble that accompanies the publication of the regulations, are reviewed by the same drafters and policy reviewers who pass on the regulation itself. That review is undertaken with the knowledge that affected taxpayers will use such a document in attempting to understand and apply the regulation. A preamble will frequently express the intended effect of some part of a regulation. As a statement of intent that represents an institutional viewpoint, such a document might be helpful in interpreting an ambiguity in a regulation. An affidavit, such as Ruhe's however, cannot

receive the care or scrutiny that a statement intended for public guidance receives.

We conclude, therefore, that a post hoc statement of an individual who assisted in the drafting or passed on the regulations is not evidence which tends to prove or disprove the facts at issue. Such views are an interpretation of the law and are not relevant evidence. The Ruhe affidavit is irrelevant and inadmissible.

Because we conclude that the Ruhe affidavit is inadmissible on relevancy grounds, we do not reach the issue of hearsay.

*An appropriate order will be entered.*