HERK VISNAPUU, [1] Petitioner v. Commissioner of Internal Revenue, Respondent Visnapuu v. Commissioner
Docket Nos. 2771-84; 2772-84; 2773-84.
United States Tax Court
T.C. Memo 1987-354; 1987 Tax Ct. Memo LEXIS 354; 53 T.C.M. (CCH) 1381; T.C.M. (RIA) 87354; July 21, 1987. Jeffry L. Weiler, for the petitioners. Grant A. Wolfe and Helene R. Leone, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
Taxable Year Ended
Deficiency
Herk Visnapuu
12/31/76
$ 5,215
12/31/77
12,845
12/31/78
10,710
12/31/79
10,036
Visnapuu & Associates
9/30/77
$ 2,340
9/30/78
4,232
9/30/79
3,065
9/30/80
4,426
H.V. Development
5/31/75
$ 67
Corporation
5/31/77
5,778
5/31/78
6,778
5/31/79
4,278
5/31/80
1,610
After concessions, [2] the primary issues for decision are: (1) whether respondent's notice of deficiency was arbitrary and capricious; (2) whether certain factual stipulations and documents should be excluded from the evidentiary record as irrelevant and immaterial; (3) *357 whether H.V. Development Corporation should be disregarded as a separate taxable entity and its reported income attributed to Visnapuu & Associates, Inc.; (4) whether Herk Visnapuu received gross income from Visnapuu & Associates, Inc. by reason of the diversion of gross receipts of Visnapuu & Associates, Inc. to H.V. Development Corporation which funds were used to maintain and operat a structure located in Canada; and (5) whether the deductions relating to the operation and maintenance of the Canadian facility are allowable to any petitioner. [3]
*358 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, the supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Herk Visnapuu ("Visnapuu") resided in Shaker Heights, Ohio, when he filed his petition in this case. Visnapuu & Associates, Inc. is an Ohio corporation with its principal place of business in Cleveland, Ohio, when its petition was filed in this case. H.V. Development Corporation is an Ohio corporation, with its business address in Cleveland, Ohio, at the time its petition was filed in this case. During the years in issue, Visnapuu was a licensed architect and president and sole shareholder of the architectural firm of Visnapuu & Associates, Inc. (sometimes hereinafter referred to as "V & A"). V & A was incorporated on January 1, 1970, and operated under a variety of names. [4] From 1970 until 1975, V & A was called Visnapuu and Gaede, Inc.[5] V & A's articles of incorporation state that the firm's principal purpose shall be to engage in the general practices or architecture and engineering, and to make investments and engage in other occupations or businesses *359 not incompatible with the practice of architecture and engineering. Until December 15, 1974, Visnapuu and Robert C. Gaede ("Gaede") were the principal architects of the firm. Gaede served as chairman of the board and secretary. Visnapuu served as president and treasurer. Both Gaede and Visnapuu were 50 percent shareholders of the firm's common stock and had signatory power over the firm's funds. During his tenure with Visnapuu & Gaede, Inc., Gaede was primarily responsible for the architectural design work performed by the firm. To a lesser degree, Gaede contacted clients and supervised the construction process. Visnapuu performed the bulk of the firm's administrative work and was the primary promoter and marketing agent for the firm. Visnapuu was aggressive and successful in his promoter role. *360 Visnapuu and Gaede, Inc. reimbursed Visnapuu for his out-of-pocket expenses for entertaining clients in Cleveland and other areas. Due to a variety of factors, including a depressed business market and a difference of opinion with Visnapuu as to marketing procedure, Gaede left the firm on December 15, 1974. During the taxable years at issue, Visnapuu was sole shareholder and director of what was now called Visnapuu & Associates, Inc. [6]
H.V. Development corporation (hereinafter ""H.V. Development'') is an Ohio corporation formed on June 24, 1970. H.V. Development was capitalized with $ 500 and issued 100 shares of common stock with no par value. Visnapuu owned all 100 shares and served as sole director, president and treasurer. [7]Visnapuu deposited the $ 500 capital amount in Union Commerce Bank, the same bank at which V & A maintained its accounts. *361 H.V. Development's articles of incorporation executed on June 24, 1970, lists the corporation's general purposes: (a) To conduct a general business relating to the development of real property including investigating, making studies, organizing, promoting, developing and participating in the construction and financing of buildings of any character, including multi-family housing, hospital and extended care facilities and other building programs contemplated by the United States National Housing Act of 1968. (b) To purchase, lease, or otherwise acquire, to hold and use, to sell, lease, or otherwise dispose of, and to deal in or with personal property of any description and any interest therein; (c) To purchase, lease, or otherwise acquire, to invest in, hold, use, and encumber, to sell, lease, exchange, transfer, or otherwise dispose of, and to construct, develop, improve, equip, maintain, and operate structures and real property of any description and any interest therein; (d) To borrow money, to issue, sell, and pledge its notes, bonds, and other evidences of indebtedness, to secure any of its obligations by mortgage, pledge, or deed of trust of all or any of its property, *362 and to guarantee and secure obligations of any person, all to the extent necessary, useful, or conducive to carrying out any of the purposes of the Corporation; (e) To invest its funds in any shares or other securities of another corporation, business, or undertaking or of a government, governmental authority, or governmental subdivision; and (f) To do whatever is deemed necessary, useful, or conducive to carrying out any of the purposes of the Corporation and to exercise all other authority enjoyed by corporations generally by virtue of the provisios of the Ohio General Corporation Law.
Under H.V. Development's code of regulations adopted June 29, 1970, Visnapuu had the sole power to determine the compensation of all and any employees. On December 3, 1974, Visnapuu assigned his shares in H.V. Development to his then-wife, Malle Visnapuu ("Malle"). Under an agreement signed on that date, Visnapuu had the right of first refusal if Malle wished to sell her shares. Malle and Visnapuu were divorced on November 1, 1979. Pursuant to an agreement, Malle agreed to assign over all shares of common stock in H.V. Development to Visnapuu. [8] On January 25, 1980, an action by written *363 consent of the sole director of H.V. Development authorized Visnapuu to be the only individual who could execute checks to withdraw corporate funds or borrow money on behalf of the corporation. On May 31, 1984, Visnapuu attempted belatedly to cancel and transfer Malle's certificate of H.V. Development common stock to Visnapuu. [9]
On August 21, 1968, Visnapuu purchased property located on Lake Rousseau, Ontario, Canada. [10] On July 1, 1970, Visnapuu as an individual and H.V. Development executed a document purporting to lease the Canadian property to H.V. Development for a period of ten years. The document states that rent shall be $ 1,200 per year. [11] Additionally, H.V. Development has the right at its sole cost and expense, to erect a building or buildings and *364 make certain other improvements upon the premises, * * *. In 1970, construction began on a house on the Lake Rousseau property (the "lake house"). By 1973, construction was complete. Herk Visnapuu as an individual supplied the funds for and supervised the construction. [12] The lake house is a wooden structure which is situated on a steep slope along Lake Rosseau. In addition to living, dining, kitchen and bathroom areas, the house contains two bedrooms and a loft area. An outside deck overlooks the lake. Visnapuu maintained at the lake house a 10-foot fiberglass canoe, as 12-foot aluminum boat with a six-horsepower Johnson outboard motor, and an 18-1/2 foot Grew indoor/outdoor motor boat. The lake house was about a 7-1/2 hour drive from Cleveland. During the years at issue, Visnapuu entertained various people at the lake house. Visnapuu *365 would lead tours of Lake Rosseau on the Grew boat. [13] On occasion, Visnapuu rented snowmobiles for children of guests who visited the lake house. As some of the guests who accompanied Visnapuu to his lake house were potential clients or business associates of V & A, V & A (and Visnapuu & Gaede, Inc.) reimbursed Visnapuu individually for his out-of-pocket expenses in entertaining his guests. These expenses were for travel expenses, meals and liquor. [14] While it appears that business discussions did take place on occasion, we find that, on the basis of the evidence and testimony before us, the lake house visits were primarily for social entertaining and relaxation. There is no credible evidence that suggests that the Canadian lake house served as a "Conference Center" for H.V. Development. Accordingly, we find that the lake house was Visnapuu's personal recreational facility or, rather, vacation home. Visnapuu never held himself out to business *366 associates or public officials as a representative, agent, employee or officer of H.V. Development during these visits or, in fact, at any time during the taxable years at issue. During the years in issue, H.V. Development never paid salaries, wages or officer compensation to any individual. On its Form 1120 for the taxable years in issue, H.V. Development claimed total income of $ 19,381, $ 26,181, $ 28,1 83, $ 21,628, and $ 9,471. [15] H.V. Development deducted the operating and maintenance expenses of the Canadian lake house. [16] The returns list H.V. Development's principal business activity as consulting. On its Form 1120 for the taxable year ending May 31, 1977, repairs were for a "cottage." *367 In early 1979, Internal Revenue Service Agent Sherman Frankel ("Frankel") began an examination of H.V. Development. During his initial contact with petitioners' CPA, Donald F. McQuilkin ("McQuilkin"), McQuilkin represented to Frankel that there was no relationship between V & A and H.V. Development. McQuilkin stated that these two corporations performed unrelated, separate services; V & A performed architectural services and H.V. Development performed consulting services. McQuilkin supplied Frankel with H.V. Development's business records which consisted of cash stubs, deposit slips and year-end write-ups of expenses and income prepared by McQuilkin. There were no client billings. By early 1980, the investigation expanded to an examination of V & A's returns and Visnapuu's individual 1040 return. Upon a careful examination of the cash receipts and disbursement journal of V & A's returns, the write-up analysis of H.V. Development, the job billings of V & A, the client invoices of V & A, and the check stubs and deposit receipts of H.V. Development, Frankel ascertained that the alleged client billings of H.V. Development were duplicated, both as to name and amount, on the job *368 billing logs of V & A. Moreover, petitioners submitted into the record "as substantiation of the IRS agent" receipts which petitioners represented to be or as H.V. Development's expenses for the "Conference Center." These receipts do not represent operating and maintenance expenses of the lake house. Some of the receipts are in pencil. Both Visnapuu and his bookkeeper had made notations on the receipts. The bookkeeper's notations were made at the time of the IRS audit. The same receipts previously had been offered to Frankel as substantiation for V & A's reimbursement to Visnapuu for his out-of-pocket entertainment expenses. When presented with this material, McQuilkin continued to state to Frankel that V & A and H.V. Development were separate entities. McQuilkin represented to Frankel that V & A acted as the billing agent of H.V. Development. However, invoices issued by V & A to clients on the job billing logs for the taxable years in issue bear no identifying mark or notation that they constituted clients of H.V. Development or related to services performed by H.V. Development. On January 14, 1981, Visnapuu signed a letter stating that as chief operating officer of both *369 V & A and H.V. Development: I receive monies and direct deposits thereof to the corporation under whose auspices the work has been performed. No record is kept as to who the check is from or to. It is deposited against the job. V & A filed a Form 1120, U.S. Corporate Income Tax Return, for each of the taxable years in issue. For each of the taxable years, Visnapuu received the only officers' compensation. [17] These returns contain no references to H.V. Development. Visapuu filed a Form 1040, U.S. Individual Return, for the taxable years in issue to which he attached forms W-2 from V & A for each taxable year. Other than declaring $ 3,000 on his 1979 tax return for "H.V. Development Rental," these returns contain no references to H.V. Development. [18]
*370 On November 14, 1983, respondent issued separate notices of deficiency to petitioners. First, with respect to H.V. Development, respondent denied the operating and maintenance expenses deducted on the returns due to the fact that H.V. Development had not established either that any of the amounts were ordinary and necessary business expenses under section 162 [19] or that such amounts were production of income expenses under section 212. Significantly, respondent also disallowed the expenditures under section 274. Second, with respect to V & A, respondent determined additional gross receipts with respect to V & A as respondent found that H.V. Development is V & A's alter ego and lacks economic substance. As such, respondent determined these gross receipts represent income of V & A. Finally, with respect to Visnapuu, respondent determined that, under section 61, Visnapuu received this additional income either directly or indirectly from V & A for his personal benefit. *371 OPINION At the outset, we must address (1) petitioners' assertion that respondent's determinations within the statutory notices of deficiency are arbitrary and capricious and (2) the parties' respective relevancy objections to certain factual stipulations and incorporated documents. First, petitioners assert that respondent's determinations in the notice of deficiency are arbitrary, capricious, and discriminatory. Petitioners allege that the determinations are not based upon fact or law and represent findings of fact inconsistent with evidence presented to respondent's agents. On brief, petitioners further contend that the statutory notices of deficiency provide no explanation of how the amounts of income reflected as "additional income" and reallocated to petitioner V & A and petitioner Visnapuu from H.V. Development were calculated. Respondent's determination of a deficiency in tax is presumptively correct and petitioners bear the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 114 (1933); Rule 142(a). Where, however, it is demonstrated that the statutory notice of deficiency is arbitrary and excessive, the presumption of correctness evaporates *372 and the burden of going forward with evidence supporting the determination of deficiency shifts to the respondent. Helvering v. Taylor,293 U.S. 507 (1935); Dellacroce v. Commissioner,83 T.C. 269, 280, 187 (1984). Deciding whether the statutory notice of deficiency is arbitrary requires that we look behind the statutory notice to examine the evidence used in making the determination, something this Court, as a general rule, is reluctant to do. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). This Court will not look behind the notice of deficiency to examine the evidence used, the propriety of respondent's motives, the administrative policy or the procedure followed by respondent in the determination of a statutory notice of deficiency. Dellacroce v. Commissioner, supra;Riland v. Commissioner,79 T.C. 185, 201 (1982); Llorente v. Commissioner,74 T.C. 260 (1980), affd. in part, revd. in part and remanded in part 649 F.2d 152 (2d Cir. 1981); Jackson v. Commissioner,73 T.C. 394 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. at 327. *373 The underlying rationale for the foregoing is that a trial before this Court is a trial de novo proceeding. Our determination of a taxpayer's tax liability is based on the merits of the case as presented and is not based on an administrative record. Greenberg's Express, Inc. v. Commissioner, supra.
However, in cases involving unreported illegal income, courts have recognized an exception to the general rule of Greenberg's Express, Inc., where respondent introduces no substantive evidence and merely relies on the presumption of correctness as to the determinations within the statutory notice of deficiency and where the taxpayer has challenged the determinations within such notice of deficiency as arbitrary and unreasonable. Dellacroce v. Commissioner, supra;Llorente v. Commissioner, supra;Jackson v. Commissioner, supra.Such is clearly not the case before us. Respondent has established by substantial evidence that the determinations within the statutory notices of deficiency were not arbitrary and capricious. Despite McQuilkin's misleading representations concerning the relationship between V & A and H.V. Development, *374 Agent Frankel performed a careful examination of petitioners' books and records to reach the numbers set forth in the notices of deficiency. [20] Thus, respondent's determinations are entitled to the presumption of correctness such that petitioners shall bear the burden of going forward as well as the burden of proof in this case. Welch v. Helvering, supra; Rule 142(a).
Second, pursuant to the provisions of Rule 91(a), both parties have raised relevance and materiality objections to certain facts and evidence present in the stipulations. Petitioners object to paragraphs 46 and 47 of the stipulations of facts on the grounds of materiality and relevance. [21] Stipulation 46 states: For the period 1969 through 1984, inclusive, H.V. Development Corporation did not maintain a telephone listing in either the white pages or the yellow pages for *375 the Cleveland, Ohio Metropolitan area. Petitioners assert that because H.V. Development rendered services to V & A and not to the general public and maintained the same office space, stipulation 46 is not relevant to the relationship between H.V. Development and V & A. Respondent asserts that the failure on the part of a corporation to list itself in the local telephone company directory is an indicium that the corporation is not carrying on a business and, as such, this fact is relevant and petitioners' objection should be overruled. Concomitantly, respondent objects to paragraph 41 of the stipulation of facts and Exhibit 38 on the grounds of materiality and relevance. Paragraph 41 states: Attached hereto and marked Exhibit 38 are copies of excerpts from a Canadian government publication entitled "Guide to Eating Ontario Sport Fish, 1984-1985," published by the Ontario Ministry of the Environment *376 and Ministry of Natural Resources.
Respondent objects to the admission of this fact and exhibit because the reported contamination levels in fish located in Lake Rousseau during 1984 and 1985 are not relevant to the contamination level of fish during the years in issue. Additionally, respondent notes that such an issue is the province of an expert witness. Petitioner contends that such information is material and relevant to show a pattern of pollution in Lake Rosseau during and subsequent to the years in issue which would tend to negate personal use of the Canadian lake house for fishing. Rule 401, Federal Rules of Evidence, applicable in the Court pursuant to Rule 143, and section 7453, defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Armco, Inc. v. Commissioner,87 T.C. 865, 867 (1986). Upon reviewing stipulation paragraphs 41 and 46 and Exhibit 38, we find these facts and this document relevant and material within the meaning of rule 401, Federal Rules of Evidence *377 , and thus the objections are overruled and the facts and evidence are hereby made a part of this record. [22]
With these preliminary questions settled, we now turn to the primary issues for determination in the case before us. Respondent contends that H.V. Development was a sham because it neither was formed for the purpose of engaging in business activity nor carried on a business subsequent to incorporation. As such, respondent asserts that H.V. Development's reported income should be taxed to V & A as the true earner of income. In the alternative, if the Court concludes that H.V. Development was a separate entity for Federal income tax purposes, respondent contends that its taxable income should be reallocated to V & A on assignment of income principles. Further, if the Court finds H.V. Development to be a separate taxable entity and the true earner of income, respondent asserts that the expenses deducted by H.V. Development for *378 operation and maintenance of the Canadian lake house are nondeductible as those expenses fail to meet the tests of sections 162 and 274. Petitioner asserts (1) that a bona fide, nontax business purpose of promotional activities existed for the formation of H.V. Development and (2) that, H.V. Development was incorporated, it carried on business activities of market consulting and business promotion of V & A through its president Herk Visnapuu. [23]
We agree with respondent that H.V. Development was a sham and that V & A was the true earner of the income declared by H.V. Development for the taxable *379 years at issue. Accordingly, we need not reach respondent's alternative arguments. Taxpayers have the right to mold business transactions in such a manner as to minimize the incidence of taxation. See Gregory v. Helvering,293 U.S. 465, 469 (1935). However, the government is not rquired to acquiesce in the chosen form if the form is unreal or a sham. In such cases, the form may be disregarded. Higgins v. Smith,308 U.S. 473, 477 (1940). A corporation is to be recognized as a separate taxable entity if (1) the purpose for the formation of the corporation is the equivalent of a business activity or (2) the incorporation is followed by the carrying on of a business. Moline Properties v. Commissioner,319 U.S. 436, 438-439 (1943); Achiro v. Commissioner,77 T.C. 881, 901 (1981). If neither requirement is met, the corporation is to be declared a sham, and all income is to be attributed to the true earner. Shaw Construction Co. v. Commissioner,35 T.C. 1102, 1114-1117 (1961), affd. 323 F.2d 316 (9th Cir. 1963). [24]
*380 Petitioners have the burden of proving that H.V. Development is a separate entity for tax purposes. Welch v. Helvering, supra; Rule 142(a). After a careful review of the entire record before us, we are persuaded that H.V. Development was not formed for the purpose which is the equivalent of business activity and that it did not carry on business after its incorporation. Initially, petitioners assert that the business purpose of H.V. Development upon its formation was to render marketing services to V & A in order to promote the architectual and planning practice of V & A. In furtherance of the business purpose, petitioners contend that H.V. Development leased land near Lake Rosseau and constructed a "Conference Center" on the land. H.V. Development was formed on June 24, 1970. Its articles of incorporation are general in nature and do not state in any way that H.V. Development's business propose is to render marketing services to V & A or to anyone else. Moreover, we consider it a coincidence that H.V. Development was formed in 1970 when construction began on Visnapuu's lake house. In fact, H.V. Development was formed on June 24, 1970; on July 1, 1970, Visnapuu *381 as lessor and H.V. Development as lessee executed a document purporting to lease the Canadian property to H.V. Development for a period of ten years. While H.V. Development had the "right" to erect a building at its own expense, Visnapuu as an individual paid for and supervised the construction of the lake house. Under these circumstances, we do not believe that the asserted marketing purpose was a purpose for H.V. Development's incorporation but was, at most, a plausible afterthought. Aldon Homes, Inc. v. Commissioner,33 T.C. 582, 598 (1959). Thus, we conclude that H.V. Development was not formed for a purpose which is the equivalent of business activity. Second, petitioners assert that H.V. Development carried on its business activities through the efforts of Visnapuu, its president. Petitioners contend that the primary activity was for Visnapuu to conduct "business meetings" at the "Conference Center" on Lake Rosseau with actual or potential clients of V & A. A corporation is not treated as carrying on a business merely because it engages in certain corporate formalities such as holding corporate meetings, adopting bylaws, electing officers and directors, *382 issuing securities and keeping separate books. See Aldon Homes, Inc. v. Commissioner,33 T.C. at 600. Further, a corporation is not treated as carrying on a business if its activities such as executing contracts and filing tax returns are merely "empty gestures" rather than substantial transactions. Kimbrell v. Commissioner,371 F.2d 897, 901-902 (5th Cir. 1967), affg. a Memorandum Opinion of this Court. However, a corporation which in addition to engaging in corporate formalities holds itself out to unrelated third parties and engages in substantial business activities will be held to have carried on a business. Skarda v. Commissioner,250 F.2d 429, 434-435 (10th Cir. 1957), affg. 27 T.C. 137 (1956). The following factors lead us to the conclusion that H.V. Development did not carry on a business after incorporation. We first observe that H.V. Development has never paid salaries, wages or officer's compensation to any individual. In fact, H.V. Development has no employees. H.V. Development did not pay Visnapuu any compensation for services Visnapuu claims to have rendered to H.V. Development prior to and during *383 the taxable years in issue. H.V. Development did not file any Federal employment tax returns, Forms 940 and 941, either prior to or during the taxable years in issue. From time to time, however, H.V. Development utilized the staff of V & A to perform secretarial work and maintenance at the Canadian lake house. We next observe that the address given for H.V. Development is the same address of V & A. For the period 1969 through 1984, H.V. Development did not maintain a telephone listing in either the white pages or yellow pages for the Cleveland, Ohio, metropolitan area. Our third observation is that Visnapuu never held himself out to business associates or the public as a representative, agent, employee or officer of H.V. Development. All the evidence before us indicates that business associates and personal acquaintances had never heard of H.V. Development until shortly before trial. In fact, Robert C. Gaede, Visnapuu's former partner, could not recall the name of H.V. Development although he vaguely recalled such an entity being created. Finally, a comparison of the business records of V & A and H.V. Development illustrates the sham nature of H.V. Development. Alleged *384 client billings of H.V. Development which appear on the check stubs of H.V. Development also appear both as to client name and amount onthe job billing logs of V & A. Invoices issued by V & A to each of its clients noted on the job billing logs bore no identifying mark or notation that they constituted clients of H.V. Development or related to services performed by H.V. Development. Visnapuu completely controlled both V & A and H.V. Development during the years at issue; he had sole power over the funds of both and was in a position to determine and direct the relationship, if any, that would exist between V & A and H.V. Development. On the basis of the financial records before us, we conclude that Visnapuu personally diverted the gross receipts of V & A to himself through H.V. Development. Such gross receipts are attributable to invoices sent to clients of V & A for services performed by V & A. On the record presented to us, we find that H.V. Development did not carry on any business after its incorporation and was only the alter ego of V & A. Furthermore, as we have concluded that H.V. Development's separate corporate existence was a sham, and that V & A was the true earner *385 of the income declared on H.V. Development's returns, we hold for respondent that V & A is taxable on this income. [25]
The next issue for decision is whether Visnapuu received income under section 61 from V & *386 A as a result of the diversion of gross receipts of V & A to H.V. Development and the application of those funds for Visnapuu's personal benefits. In the alternative, if the Court finds that these funds are in the nature of a dividend, respondent asserts that petitioners have failed to show that V & A did not have sufficient earnings and profits to make the distributions a dividend. Petitioners assert that if we determine that V & A is the true earner of these funds then these funds should not be attributable to Visnapuu. Alternately, if the Court finds that such funds are income to Visnapuu, petitioners argue that such income should be treated as compensation income to Visnapuu from V & A and deductible by V & A. Finally, if the Court finds that such funds are not compensation to Visnapuu, petitioners assert that the income should be considered a distribution under section 301. Petitioners contend that respondent has the burden of proof on the earnings and profits issue. Payment of corporate funds to a shareholder of the corporation will result in additional income to the shareholder where the shareholder "received money over which he had complete control, and which he took *387 as his own, treated as his own, and which resulted in economic value to him." Weir v. Commissioner,283 F.2d 675, 684-685 (6th Cir. 1960). [26]
We have found that the Canadian lake house was Visnapuu's personal recreational facility. Although Visnapuu entertained some potential business associates at the lake house, such visits were primarily for pleasure and relaxation. Moreover, V & A reimbursed Visnapuu only for out-of-pocket entertainment expenses such as meals and liquor. Petitioners' contention that the Canadian lake house was a "Conference Center" is totally without merit to the point of being frivolous. The lake house was for Visnapuu's personal enjoyment and, as V & A funds were diverted to him to pay for its operation and maintenance, such funds are income to Visnapuu under section 61. [27]
*388 Finally, petitioners argue that if the income is attributed to Visnapuu, the operation and maintenance expenses should be deductible to Visnapuu under sections 162 and 274. Given the recordkeeping documents before the Court, it is clear that, even if petitioners could meet the ordinary and necessary business test of section 162 and if the lake house qualified as an entertainment facility under section 274 (a)(1)(B), petitioners could never meet the stringent substantiation requirements of section 274(d). [28]
*389 Section 274(d) provides in part that an otherwise deductible entertainment expenditure is not deductible unless the taxpayer substantiates by adequate records or sufficient evidence corroborating his own statement: (1) the amount of the expenditure; [29] (2) the time of entertainment; (3) the place of entertainment; (4) the business purpose of entertainment; and (5) business relationship of persons entertained. See sec. 1.274-5(b)(3), Income Tax Regs.
An "adequate record" is defined in part as any entry in an account book, diary, or similar record made at or near the time of the expenditure. Sec. 1.274-5(c)(2)(ii), Income Tax Regs. As to each expenditure element not substantiated by adequate records, the substantiation requirements may be satisfied by "sufficient evidence," defined in part as: (1) the taxpayer's own statement, whether written or oral, containing specific information in detail as to each element; and (2) other corroborative evidence sufficient to establish such element. Sec. 1.274-5(c)(3), Income Tax Regs. If such element is the business relationship to the taxpayer *390 or business purpose of an expenditure, the corroborative evidence may be circumstantial. Sec. 1.274-5(c)(3), Income Tax Reg.
Petitioners have presented no reliable evidence of expenses substantiated by adequate records. First, petitioners offered a noncontemporaneous listing of the guests at the lake house, the month and year of their visit and the alleged business purpose. During the audit, Visnapuu's son, Andre Visnapuu, prepared this list from his father's desk calendars. At trial, petitioners admitted that the list contained several errors in that several guests who appeared on the list never visited the lake house on those dates. As a result, we can place no faith in the accuracy of this list and cannot rely on it as a "adequate record" for purposes of 274(d). Turning to Visnapuu's personal desk calendars which provide the basis for the prepared list, we likewise cannot accept such evidence as an "adequate record." Not only would the credibility of these calendars be brought into question due to the errors in the prepared list, but the calendars provide little, if any, information of the guests and the business purpose of the trip. Furthermore, information "whited-out" *391 or erased from the calendars denigrates the calendars' credibility. Additionally, we have found the receipts which petitioners offered as substantiation for H.V. Development expenditures at the cottage are not what they were represented to the Court to be but are the receipts of V & A for out-of-pocket expenditures paid to Visnapuu. This borders on fraud and abuse of the judicial process. Finally, the testimony at trial did little to convince us that petitioners substantiated the expenses at the lake house. Visnapuu's testimony was largely self-serving and in some instances extremely suspect. With the exception of McQuilkin, whose testimony we found to be unctuous, petitioners' witnesses were generally credible, but recalled the dates and purposes of visits to the lake house by reference to papers prepared by petitioners' attorney. It is unknown from what source the information on the papers was gleaned. As such, we do not find any reliable evidence which would serve to adequately substantiate petitioners' expenses under section 274(d). Consequently, we must deny deductions to any petitioner for the 0peration and maintenance expenses of the Canadian lake house. We have *392 considered petitioners' other arguments and find them to be without merit. [30]
*393 To reflect the foregoing, Decisions will be entered under under Rule 155 in docket Nos. 2771-84 and 2772-84. Decision will be entered for the petitioner in docket No. 2773-84.
Footnotes
1. Pursuant to an order of this Court dated October 30, 1984 granting a motion to consolidate, cases of the following petitioners are consolidated herewith: Visnapuu & Associates, Inc., docket No. 2772-84, and H.V. Development Corporation, docket No. 2773-84. ↩
2. Respondent concedes that in docket No. 2771-84 the income adjustment in the notice of deficiency is overstated in the amount of $ 8,713 for taxable year 1979. Respondent asserts that the proper adjustment amount for 1979 is $ 12,389 rather than $ 21,102. The net operating loss deduction, medical expense deduction and sales tax adjustments are computational matters that will be resolved in a Rule 155 computations. In the petition for docket No. 2773-84, H.V. Development alleges that the statute of limitation had expired with respect to the assessment for taxable year 1975. However, in its reply to respondent's answer, filed June 1, 1984, H.V. Development conceded that respondent's notice of deficiency was properly issued before the expiration of the statute of limitations with respect to taxable year 1975. ↩
3. Both respondent and petitioners have raised alternative arguments on briefs which will be addressed, if necessary, after the Court has considered the primary issues for decision. Respondent concedes the deficiencies determined to be due and owing from H.V. Development Corporation for the years in issue if respondent prevails as to its primary or alternate position in the statutory notice of deficiency issued to Visnapuu & Associates, Inc. ↩
4. Prior to 1970, the firm operated in the form of a partnership known as Visnapuu & Gaede. From January 1975 until March 1975, the firm operated under the name of Visnapuu & Pittenger, Inc. From December 1983, the firm was called Visnapuu Singleton Associates, Inc.↩
5. Upon incorporation, Visnapuu & Gaede, Inc. acquired the assets of the partnership of Visnapuu & Gaede.↩
6. Visnapuu served as director, president and treasurer during this period. While the tax returns of V & A list Visnapuu as a 50 percent shareholder, we believe this is in error. ↩
7. An individual named William J. Veseley served as secretary. On January 25, 1980, Andrew Visnapuu, Herk Visnapuu's son, became secretary. ↩
8. In addition, Visnapuu agreed that Malle would not be held liable for the actions of H.V. Development. ↩
9. The evidence on record contains various certificates which petitioners allege represent the cancelled and transferred shares. Not only do petitioners attempt to effectively back date the cancellation and transfer of the shares to November 1, 1979, it is unclear which certificates, if any, are originals. ↩
10. Visnapuu purchased vacant land for $ 12,000 (Canadian currency). The parcel of land is in the Township of Humphrey, in the District of Parry Sound. ↩
11. The lease is a triple net lease in which lessee H.V. Development supposedly pays all taxes, utilities and insurance. ↩
12. The contractor was Eto Construction Company of Toronto. ↩
13. Visnapuu did not design any other houses situated on Lake Rousseau. ↩
14. In particular, Visnapuu purchased liquor at the Ammex Warehouse, Inc. located in Hiagara Falls, New York, which was in route to the lake house in Canada. ↩
15. Gross receipts or sales constituted the majority of total income of H.V. Development. H.V. Development paid tax in only two years; in taxable years ending May 31, 1975, and May 31, 1977, H.V. Development paid $ 985 and $ 1,267, respectively. ↩
16. The deductions are as follows: Taxable Years Ended May 31
Expenses
1975
1977
1978
1979
1980
Repairs
$ 4,358
$ 2,454
$ 6,487
$ 3,159
$ -   Rent
1,200
3,600
3,600
3,000
3,000 Taxes
529
680
835
792
705 Interest
2
-   -   -   -   Depreciation Depreciation included the building, furnishings, furniture, fixtures, and transportation equipment. *
6,858
6,542
6,538
5,706
4,943 Other deductions Other deductions included insurance, utilities, professional services, telephone, sales and promotion, outside services, landscape and snow removal, cleaning, and boat expenses. **
2,232
6,571
11,037
8,973
9,216 ↩
Total
$ 15,179
$ 19,847
$ 28,497
$ 21,630
$ 17,864
17. V & A compensated Visnapuu $ 20,000 for both taxable years ending Sept. 30, 1977, and Sept. 30, 1978. For taxable year ending Sept. 30, 1979, Visnapuu received $ 29,000 in compensation. For taxable year ending Sept. 30, 1980, Visnapuu received $ 48,000. ↩
18. Although Visnapuu declared $ 2,392 and $ 2,017 of consulting fees for taxable years 1976 and 1979, respectively, we cannot determine on the record before us from whom Visnapuu earned these fees. We also note that according to the lease document with H.V. Development, rent as $ 1200 per year. Petitioners made no attempt to explain this $ 3,000 figure. ↩
19. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
20. Frankel was a credible witness and we believe that he neither lost petitioners' records nor shuffled them to the point of disorganization as petitioners claim. Petitioners' assertion to the contrary was merely one of several obfuscating tactics employed by petitioners to confuse the record by "muddying up the waters." ↩
21. On brief, respondent had no objection to the sustaining of petitioners' objection to the admission into evidence of paragraph 47 of the stipulation of facts on the grounds of materiality and relevancy. Accordingly, stipulation paragraph 47 is excluded from evidence.↩
22. The parties have objected to other stipulated facts and incorporated documents but as neither party raised the issue of relevancy and materiality of the documents on brief, the stipulated facts and documents are made a part of the record. ↩
23. On brief, petitioners argue that the income of H.V. Development should not be reallocated and under assignment of income principles citing sections 482 and 269A. Respondent did not raise the applicability of these sections to this case in his notices of deficiency, pleadings, or briefs. Indeed, respondent has rejected the applicability of these sections on brief. As a result, we will not consider petitioners' argument concerning sections 482 and 269A as this issue was first raised on brief. Rule 34(b)(4); Neely v. Commissioner,85 T.C. 934, 943-944↩ (1985). 24. See Horn v. Commissioner,T.C. Memo. 1982-741↩. 25. On brief, petitioners cite Hospital Corp. of America v. Commissioner,81 T.C. 520 (1983), and Achiro v. Commissioner,77 T.C. 881 (1981), as authority. Upon review, we find these cases distinguishable from the cases before us. In Achiro, the corporation's business purpose of consulting was set out in the articles of incorporation and the corporation hired employees. Achirco v. Commissioner, supra at 885, 901. In Hospital Corp. of America, the Court found that the subsidiary in question was organized for a business purpose and actually carried on business activities. Hospital Corp. of America v. Commissioner, supra at 586. Such is not the case here. Furthermore, we note that this Court stated that our inquiry in this regard is "essentially factual," and each case turns on its individual facts and circumstances. Hospital Corp. of America v. Commissioner, supra↩ at 580. 26. See A & F Management Corp. v. Commissioner,T.C. Memo. 1984-585↩. 27. Moreover, although not clearly characterized as such by respondent in the notice of deficiency, the record indicates that these payments are includable in Visnapuu's income as a distribution with respect to his stock in V & A under section 301. As we earlier stated in this opinion, petitioners bear the burden of proof and of going forward in these cases. Rule 142(a). As petitioners presented no evidence one way or the other that these payments were not made from current or accumulated earnings and profits, the full amount of these payments are dividends as defined by sections 316(a) and 61(a)(7) and respondent's determination is sustained. See A & F Management Corp. v. Commissioner,T.C. Memo. 1984-585↩. 28. See secs. 1.274-2(a)(2), -2(e), -5(a)(2), Income Tax Regs. Facilities which might be used for, or in connection with, entertainment include vacation homes. Secs. 1.274-2(e)(2), (3). Expenditures with respect to a facility used in connection with entertainment include depreciation, operating costs, and expenses for the maintenance, preservation, or protection of the facility Sec. 1.274-2(e)(3)(i), Income Tax Regs.
Sec. 274(a) was amended in 1978 by sec. 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2767, 2847. This amendment eliminated the deduction for all facilities, except for clubs that met the "primary use" requirement. The amendment was effective for items paid or incurred after December 31, 1978, and applies to taxable years 1979 and 1980. On brief, petitioners note the change in law and concedes the expenses are disallowed for post-1978 taxable years. As such, we will deal with section 274 before the 1978 Revenue Act Amendments. ↩
29. The amount of operating and maintenance expenses at the Canadian lake house are not at issue. ↩
30. During trial, this Court took judicial notice of Custis v. Commissioner,T.C. Memo. 1982-296. McQuilkin was the taxpayers' accountant. In Custis, the taxpayer entertained business clients at a lodge. While the case involved entertainment expenses (many of which were disallowed), none of the amounts in question related to the maintenance or depreciation expenses of the lodge itself. See Custis v. Commissioner, supra note 12. Consequently, the rules of section 274 applying to entertainment facilities were not implicated. As such, Custis is clearly distinguishable from the case before us. Respondent concedes that if he prevails on his primary position, V & A will be entitled to the full surtax exemption. As respondent has prevailed, we hold that V & A is entitled to the benefit a full surtax exemption and, thus, need not reach petitioners' surtax argument. In a supplemental brief lodged in this Court by petitioners on March 18, 1987, petitioners attempt to apply the recent Supreme Court decision in Commissioner v. Groetzinger,    U.S.    (Feb. 24, 1987). We find this argument to be totally without merit. On May 4, 1987, the Court denied petitioners' motion for leave to file supplemental brief instanter. In this regard, we note both parties' briefs to be needlessly long-winded. In particular, petitioners, instead of clarifying the confusion of the record in the briefs, continued to obfuscate clarity to the point of total chaos, inserting off-base arguments and rambling endlessly. ↩