JOHNSON FORD, INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson Ford, Inc. v. Commissioner
Docket No. 14235-84.
United States Tax Court
T.C. Memo 1987-523; 1987 Tax Ct. Memo LEXIS 515; 54 T.C.M. (CCH) 881; T.C.M. (RIA) 87523; October 6, 1987. Sidney A. Stoltz, for the petitioner. John F. Hernandez, for the respondent. JACOBS
JACOBS, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6653(b) [1]
1973
$ 13,790
$  6,895
1974
27,430
13,715
1975
15,205
7,603
The only substantive issue to be resolved is whether any part of petitioner's underpayment of tax for any of the years in issue is due to fraud. [2] In addition to resolving this issue, we must decide procedurally whether the testimony of respondent's special agent regarding the character and business reputation of Charles H. Johnson, Jr. should be considered. *517 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioner, Johnson Ford, Incorporated (Johnson Ford), a Florida corporation, operates an automobile dealership. At the time of the filing of the petition herein, and at all relevant times, its principal place of business was located in Hialeah, Florida. At all relevant times, Charles H. Johnson, Jr. (Johnson) was the sole stockholder and president of Johnson Ford. He is an experienced automobile dealer. In 1970, Johnson Ford took over the operations of Matthews Ford. Johnson Ford retained some of the persons employed by Matthews Ford, including its office manager, Fred Russell (Russell), and Russell's assistant Sandra Archer (Archer). Johnson Ford was organized into several departments (i.e., new car sales, used car sales, parts, service, and bodyshop), each with its own department head who reported to Johnson. Although Johnson had ultimate authority over, and was involved in, all aspects of the operations of Johnson Ford, he did not concern himself with the minute details of the business. Johnson also *518 owned a Ford dealership in Chicago that prevented him from monitoring the activities of Johnson Ford on a daily basis. As the office manager of Johnson Ford, Russell was in charge of supervising the preparation and maintenance of the cash receipts journal. He also directed the preparation of deposit slips used for depositing cash received by Johnson Ford into its bank account. During the tax years in issue, Johnson Ford participated in the rebate and incentive programs of Ford Motor Company (Ford). These programs included the reimbursement to Johnson Ford for the cost of factory-mandated price adjustments, shared advertising costs, financing arrangements, etc. Johnson Ford would submit reports to Ford and its entities detailing the extent of its participation in the various programs; Ford would in turn rebate sums to Johnson Ford based on this participation. Such rebates would be made by checks mailed to Johnson Ford. During 1973, Johnson Ford received 19 checks from Ford Marketing Corporation, Ford Dealers Advertising Fund and Ford Motor Company for rebates totaling $ 26,303.24. The amount of these checks ranged from $ 14.21 to $ 6,700. During 1974, Johnson Ford received *519 110 checks from Ford Marketing Corporation, Ford Dealers Advertising Fund and Ford Motor Company for rebates totaling $ 47,276.38. The amount of these checks ranged from $ 8.00 to $ 4,267.90. During 1975, Johnson Ford received 30 checks from Ford Marketing Corporation, Ford Motor Company Sales Group, Ford Dealers Advertising Fund, and Ford Assembly Plant for rebates totaling $ 24,740.00. [3] The amount of these checks ranged from $ 3.60 to $ 10,270. According to Johnson Ford's policy, all cash received by the dealership was to be entered in the cash receipts journal as it was received. This included cash and checks from operations (e.g., auto sales, part sales, service and repairs), as well as any other money received in the normal course of business. The cash was then deposited in the dealership's bank account. Pursuant to this procedure, the cash receipts journal and deposits should balance at the end of each business day, as the journal theoretically reflected all cash received and deposited by Johnson Ford. However, the rebate checks were not posted *520 to the cash receipts journal as required. Instead, Russell (who was in charge of the daily mail) took the rebate checks as received to the cashier who cashed them (i.e., the cashier gave Russell cash equal to the amount of the checks). [4] The amount of the rebate was, therefore, not included in the corporation's gross receipts. When Russell was unavailable, this check cashing procedure was followed by Archer. At some undisclosed time during the years in issue, Russell, who was married, and Archer became romantically involved with each other. In February of 1975, Johnson ordered Archer dismissed from Johnson Ford, ostensibly because of her romantic relationship with Russell. After Archer's dismissal, Russell became severely depressed, requiring medical treatment. In early 1976, Johnson instructed Russell to take time off because Russell had become incoherent and uncommunicative in the months since Archer's dismissal. When Russell returned to work approximately 45 days later, he was *521 dismissed by Johnson. Subsequent to her dismissal from Johnson Ford in 1975, but prior to Russell's termination, Archer contacted an acquaintance who was an Internal Revenue Service (IRS) agent with respect to the handling of the rebate checks at Johnson Ford. [5] The agent, in an unofficial capacity, advised Archer to officially contact the IRS regarding her allegations that the rebate checks were being improperly accounted for by Johnson Ford. Archer subsequently contacted the IRS, alleging that the rebate checks received by Johnson Ford were not accounted for on the company's books, and that the cash obtained from the rebate checks by Russell and Archer was given to Johnson at Johnson's direction. At the time she made her allegations to the IRS, Archer filed a claim for a reward for the information she provided regarding Johnson and Johnson Ford. Russell later joined in these allegations, and also filed a claim for an IRS reward. Respondent's Special Agent Glenn McAdams (McAdams) met with Johnson in September, 1976, to discuss Archer's and Russell's allegations and the disposition of the rebate checks received *522 by Johnson Ford. As a result of these allegations, a criminal investigation was instituted. The records of Johnson Ford were summoned, as well as the rebate checks from Ford and its entities. In late 1976, the Criminal Investigation Division of the IRS recommended that Johnson be prosecuted as a corporate officer of Johnson Ford under section 7201 (relating to an attempt to evade or defeat tax) for the years 1973, 1974 and 1975, under section 7206(1) (relating to fraud and false statements) for the years 1973 and 1975, and under section 7206(2) (relating to the preparation of a fraudulent return) for the year 1974. Although the matter was presented to a Federal Grand Jury of the United States District Court for the Southern District of Florida, the Grand Jury did not return an indictment for Johnson. Agent McAdams did not recommend an indictment against Johnson individually as he felt that he had no evidence, other than Russell's and Archer's allegations, to show that Johnson received the cash from the rebate checks. [6]
In July of 1977, *523 Archer and Russell entered into a bigamous marriage in the State of Alabama. Archer was unaware at the time of the marriage that Russell was already married. Archer and Russell were divorced in May of 1978. Because the rebate checks were not reported in the cash receipts journal, there was an understatement of income. Russell and Archer claim to have cashed the checks pursuant to Johnson's instructions and in turn to have given him the cash. Johnson denies their claim and instead claims he had no knowledge of this activity and that Russell and Archer must have diverted the cash to their own personal use. Respondent contends that the deficiencies arising from such understatement were the result of fraud on the part of Johnson Ford and Johnson. Petitioner concedes that the rebate checks received were improperly omitted from income. It maintains, however, that the deficiencies resulting from said omissions were not due to fraud on the part of Johnson Ford or Johnson as a corporate officer. Petitioner alleges that the notice of deficiency is barred by the statute of limitations. Further, petitioner maintains that McAdams' testimony concerning Johnson's business reputation was *524 inadmissible. OPINION Prior to considering the substantive issue in this case, we must consider petitioner's objection to the testimony of McAdams with regard to Johnson's business reputation. McAdams testified that during his investigation he spoke to a number of business and personal acquaintances of Johnson, as well as employees of Johnson Ford, who expressed opinions as to Johnson's personal and business integrity. Some of those with whom he spoke characterized Johnson, in McAdams' words, as "obsessively frugal and that if there's any way he could make a dollar, he would do it." McAdams also testified as to Johnson's allegedly demanding entitlement to a part of cash awards received by salesmen from sales contests. Petitioner contends that McAdams' testimony is irrelevant and constitutes hearsay. Generally, "evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Rule 404(a), Federal Rules of Evidence. However, evidence of other crimes, wrongs or acts is admissible *525 for purposes of proving intent or plan. Rule 404(b), Federal Rules of Evidence. Evidence is admissible in close cases and must be clearly more prejudicial than probative to be excluded. S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 184 (4th ed. 1986). Testimony regarding the business reputation of a party may be pertinent to the determination of character. To this end, evidence as to the reputation of an individual among his associates or in the community at large is excepted from the operation of the hearsay rule. Rules 405, 803(21), Federal Rules of Evidence.
As our determination of whether fraudulent intent existed at the corporate level hinges upon whether fraudulent intent existed in the acts and intentions of a corporate officer acting on behalf of the corporation, we find the testimony of McAdams to be relevant and material and, on balance, more probative than prejudicial. [7] Thus, as to Johnson's business reputation, the testimony will be considered. *526 With this procedural question settled, we now turn to the primary issue for consideration in the case before us. Respondent contends that the conceded deficiency in tax resulting from the failure of Johnson Ford to include the rebate checks in income was due to fraud with the intent to evade tax pursuant to section 6653(b). Fraud, as envisioned by section 6653(b), is the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owed. Kotmair v. Commissioner,86 T.C. 1253, 1259 (1986). See Candela v. United States,635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Powell v. Granquist,252 F.2d 56 (9th Cir. 1958); Wilson v. Commissioner,76 T.C. 623, 634 (1981), modified 77 T.C. 324 (1981); McGee v. Commissioner,61 T.C. 249 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). It is *527 illustrated by a taxpayer's intent to conceal, mislead, or otherwise prevent the collection of such tax. Stoltzfus v. United States,398 F.2d at 1004; Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112-113 (1956), affd. in part, and revd. in part on other issues 258 F.2d 568 (6th Cir. 1958), affd. 361 U.S. 87 (1959). Fraud is a factual question to be determined on the basis of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud can seldom be established by direct proof of the taxpayer's intent; therefore, the entire course of the taxpayer's conduct *528 must be considered, and fraudulent intent can be established by circumstantial evidence.[8]Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,67 T.C. at 200; Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). However, courts should not sustain findings of fraud upon circumstances which at most create only a suspicion of fraud. Carter v. Campbell,264 F.2d 930, 935 (5th Cir. 1959). *529 Respondent bears the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971); Cefalu v. Commissioner,276 F.2d 122, 128 (5th Cir. 1960), affg. a Memorandum Opinion of this Court. Respondent cannot satisfy his burden of establishing fraud by relying solely on the failure of the taxpayer to discharge his burden of proving error in the determination of the deficiency.[9]Otsuki v. Commissioner, supra at 106. However, it is unnecessary for respondent to prove the exact amount of income that was fraudulently unreported, as section 6653(b) applies to the entire deficiency for the year at issue if any portion of it was due to fraud. Smith v. Commissioner,32 T.C. 985, 987 (1959). *530 Upon consideration of the entire record before us, we conclude that respondent has failed to prove by clear and convincing evidence that the deficiency at issue was occasioned by fraud on the part of petitioner Johnson Ford or by Johnson as the corporate officer of petitioner. Johnson consistently maintained that he had no knowledge of the omission of the rebate checks from the daily cash receipts journal or the cashing of such checks by Johnson Ford employees, and that he did not direct his employees to handle the checks in such a manner. While he admitted that he knew that rebate checks were periodically received by Johnson Ford, Johnson denied ever personally receiving any of the money that resulted from the cashing of the checks. We carefully observed Johnson while testifying and found him to be a credible witness. We believe that he was unaware of the cashing of the rebate checks by Russell and Archer. It is incumbent upon respondent, who in this situation bears the burden of proof, to show indicia of fraud on the part of Johnson which can be imputed to Johnson Ford. In our opinion, respondent succeeded only in proving that the rebate checks were cashed by Russell or *531 Archer, that said checks were not entered on the books of the corporation, and that the cash remained unaccounted for. Respondent failed sufficiently to contravene the evidence that the actions of Russell and Archer with regard to the checks were anything but of their own design, and were not at the direction of Johnson or any other officer or employee of Johnson Ford. Respondent, by his own admission, was unable to show that any of the cash from the rebate checks were received by Johnson, or that his lifestyle was not in line with his reported income. Respondent did not produce any employee of Johnson Ford, other than Russell and Archer, who could testify as to the alleged culpability of Johnson with regard to the omissions in question, as to any irregularities in the treatment of salesmen's contest winnings, or as to any other circumstances that would prove Johnson was aware of unreported income. Respondent places great credence in the testimony of both Russell and Archer with respect to the cashing of the checks at issue. We, however, did not find them to be credible witnesses. Russell and Archer were romantically involved in an adulterous relationship during their tenure *532 at Johnson Ford, which later evolved into a bigamous marriage. They were both dismissed from their positions at Johnson Ford by Johnson (or at his direction), due in large part to this relationship. Archer's dismissal prior to Russell's caused Russell severe mental depression. The combination of these facts, along with the claims for reward filed by Russell and Archer with regard to their providing information regarding Johnson, sets the stage for a potentially vindictive assault, through the enterprises of respondent, upon Johnson Ford and Johnson by two individuals with "axes to grind." We also find persuasive Johnson's testimony that, had he wanted to divert corporate moneys, he would not have had to involve Russell and Archer. Johnson could have cashed the rebate checks himself, thus keeping clandestine such impropriety. Finally, respondent was unable to convince the Federal Grand Jury of the United States District Court for the Southern District of Florida to return an indictment for tax evasion against Johnson as a corporate officer of Johnson Ford on basically the same facts as presented before us here. Respondent's agent did not seek an indictment against Johnson personally *533 as he felt he had no evidence other than the allegations of Russell and Archer to prove that Johnson received the rebate check money. Taken as a whole, the record in this case does not support the allegations of fraud maintained by respondent. We are satisfied, therefore, that the deficiency in issue was not due in any part to the international commission of an act or acts by Johnson Ford or Johnson for the purpose of evading a tax believed to be owed by Johnson Ford. Section 6653(b); Kotmair v. Commissioner,86 T.C. 1253, 1259 (1986). Respondent has failed to meet his burden of proof. Section 7454(a); Rule 142(b). The burden that respondent bears in proving the applicability of the section 6501(c)(1) exception to the general three-year statute of limitations is the same burden as that which respondent bears in sustaining the additions to tax for fraud under section 6653(b). See Ruidoso Racing Assn., Inc. v. Commissioner,476 F.2d 502, 505 (10th Cir. 1973), affg. on this issue a Memorandum Opinion of this Court; Asphalt Industries, Inc. v. Commissioner,384 F.2d 229, 232 (3d Cir. 1967), revg. on another issue 46 T.C. 622 (1966). *534 As noted, supra, respondent concedes that in the absence of the applicability of section 6501(c)(1), the assessment and collection of the determined tax for the years in issue is time-barred by section 6501(a). As we have found that there was no fraud pursuant to section 6653(b) on the part of Johnson Ford or Johnson upon which to base the extension of the time provided under section 6501(c)(1), the deficiency is barred by the statute of limitations. To reflect the foregoing, Decision will be entered for petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner concedes that there was an omission of income resulting in an underpayment of tax. The parties are in agreement as to the amount of the unreported income, which is less than that determined in the notice of deficiency. Further, respondent concedes that, in the absence of the applicability of section 6501(c)(1), the assessment of any tax due from petitioner for the tax years is issue is barred by section 6501(a)↩. 3. Respondent initially determined Johnson Ford to have received rebate checks in excess of these amounts. See note 2. ↩
4. In the event that there was not enough cash on hand at the time Russell sought to cash a rebate check, he would hold the check until such time as there was enough cash to cover the check. ↩
5. The identity of this agent was not specified in the record. ↩
6. McAdams found that the lifestyle of Johnson was consistent with the income he reported individually on his personal tax returns. ↩
7. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Armco, Inc. v. Commissioner,87 T.C. 865, 867↩ (1986). 8. In the corporate context, it is the intent of the corporate officer which is to be considered. It is well settled that where there may be fraud in a corporate return and a fraudulent intent can be found in the acts of the corporate officer acting on behalf of the corporation, the fraudulent intention of the officer may be imputed to the corporation. See Ruidosco Racing Assn., Inc. v. Commissioner,476 F.2d 502, 505 (10th Cir. 1973), affg. on this issue a Memorandum Opinion of this Court; Cipollone's Sales and Service, Inc. v. Commissioner,T.C. Memo. 1956-80↩, and cases cited therein. 9. This is not a case where respondent is relying on petitioner's failure to carry his burden of proof as to the underlying deficiencies. See Habersham-Bey v. Commissioner,78 T.C. 304, 312↩ (1982). Petitioner conceded that there was an omission of income which resulted in an underpayment of tax. See note. 2.